## In re Anonymous No. 41 D.B. 73

Disciplinary Board Docket no. 41 D.B. 73.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KELLER, *Member,* January 30, 1990 — Pursuant to rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## HISTORY OF PROCEEDINGS

Petitioner was admitted to the bar of the Supreme Court of Pennsylvania in September 1963. He has not applied for admission nor has he been admitted to any other organized bar. By order of the Supreme Court of Pennsylvania dated August 7, 1973, petitioner was suspended from the practice of law for a period of two years. The suspension arose out of petitioner's representation of the victims of a bus accident in New Jersey on August 9, 1969. Petitioner was charged with and pleaded nolo contendere to soliciting clients, knowingly submitting inaccurate medical bills to insurance carriers, and intentionally failing to file retainer letters on behalf of his clients with the prothonotary of [　] County.

On November 4, 1988, petitioner filed this petition for reinstatement with the Disciplinary Board. On November 7, 1988, the matter was referred to Hearing Committee [　], comprised of [　]. At the reinstatement hearing held on March 10, 1989, petitioner was represented by [　]. Petitioner testified on his own behalf and petitioner's wife [　] also testified on behalf of her husband. Office of Disciplinary Counsel was represented by [　], assistant disciplinary counsel. By its report filed November 3, 1989, the hearing committee recommended that petitioner be reinstated to the practice of law. No exceptions to the report of Hearing Committee [　] have been filed by either petitioner or Office of Disciplinary Counsel. On November 28, 1989, the matter was referred to board member William L. Keller for review and recommendation. The matter was adjudicated on December 8, 1989.

## FINDINGS OF FACT

(1) Petitioner received a B.S. degree in economics from the University of [　] in 1960.

(2) In 1959, petitioner entered [   ] Law School and received an LL.B. degree in 1962. Petitioner was editor in chief of the [   ] and received various academic honors.

(3) In September 1972, [petitioner] enrolled at [   ] Law School and earned a LL.M. degree in 1973. [Petitioner] earned an S.J.D. degree from [   ] Law School in 1984.

(4) [Petitioner] clerked for the Honorable [A] of the United States Court of Appeals for the [   ] Circuit from August 1962 to July 1963.

(5) [Petitioner] was employed as an associate at [B] from 1963 through 1967.

(6) From 1967 until October 1971, [petitioner] was employed as an associate by [C] and maintained a private practice of approximately 40 or 50 cases in [   ], Pa.

(7) In approximately October 1971, [petitioner] voluntarily left the practice of law.

(8) When [petitioner] left the practice of law, his cases for [C] were handled by other members of the firm and his private practice clients were referred to seven other attorneys.

(9) In December 1972, [petitioner] was contacted by the University of [   ] for a teaching position and accepted an offer of employment as a faculty member in January 1973.

(10) At the time of his employment, [petitioner] was unaware whether any disciplinary action had been taken or was threatened against him.

(11) Since 1973, [petitioner] has been employed as a professor of law by the University of [   ], specializing in constitutional law, civil rights, administrative law, and federal procedure.

(12) Since September 1973, [petitioner] has also taught at [   ] Law School, [   ] University School of

Law, [   ] University in [    ] School of law, and [    ] University in [    ].

(13) In 1983 and 1984, [petitioner] declined to teach professional responsibility at the University of [   ] and in 1984 advised [D], associate dean of the law school, that he "did not comply with every rule in the applicable Code of Responsibility when [he] practiced."

(14) Since September 1973, [petitioner] has been employed as a legal advisor or consultant on the basis of his expertise as a professor of law by various attorneys, including [E], Esq. (assistant attorney general of the Commonwealth of [   ]), [F] in [   ], and [G], Esq., in [   ].

(15) On all occasions, [petitioner] advised those who employed him that he was not licensed to practice law and, on several occasions, informed them that he had been suspended from the practice of law.

(16) Since July 1973, [petitioner] has not been engaged in the practice of law and has not held himself out to the public as an attorney licensed to practice law in any jurisdiction.

(17) [Petitioner] has never accepted a referral fee from an attorney or any other source for any case since July 1973, but has received non-contingent fees from others for the value of his expertise as a legal scholar.

(18) In 1978 or 1979 and again in 1982, [petitioner] inquired about reinstatement to the Disciplinary Board of the Supreme Court of Pennsylvania, but declined to pursue reinstatement because of his concern for retribution from [H] who was Dean of the University of [   ] School of Law from 1977 through 1987.

(19) [Petitioner] successfully completed the Pennsylvania Basic Practice Course in [ ] in December 1988.

(20) In addition to his teaching responsibilities, [petitioner] has written approximately 18 or 19 law review articles, reads a substantial number of current cases, teaches continuing legal education courses in the Commonwealth of [ ], and maintains an extensive private library of law-related books and periodicals. He is actively engaged in legal scholarship, and intends to maintain his familiarity and knowledge of Pennsylvania law.

(21) [Petitioner] acknowledges the wrongful nature of his conduct leading to suspension and is remorseful for his prior wrongdoing.

(22) Petitioner has never been charged with or convicted of a crime in any other jurisdiction. Petitioner has not been involved in any other disciplinary proceedings.

## DISCUSSION

In order for petitioner to gain reinstatement to the practice of law before the bar of the Supreme Court of Pennsylvania, he has the burden of demonstrating, by clear and convincing evidence, that he has both the moral qualifications and the competency and learning in the law required for admission to practice in this commonwealth. In addition, he has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest. See rule 218(c)(3)(i) of the Pennsylvania Rules of Disciplinary Enforcement.

## *Moral Qualifications*

Petitioner pleaded nolo contendere to the charges of soliciting clients, knowingly submitting inaccurate medical bills to insurance carriers and intentionally failing to file retainer letters on behalf of his clients with the prothonotary of [ ] County. Although petitioner denied knowledge of the false medical bills, he did not assert a defense to the disciplinary charges because he felt that a two-year suspension was warranted for what he felt was improper professional conduct on his part.

Petitioner has fully admitted to his wrongdoing and is remorseful for his past conduct. Petitioner's own words are worthy of repetition:

"I am embarrassed by what I did. I look upon it and I can't stand the person that I was. I feel that I am contrite and recognize the wrong done. . .. But I now follow the dictates of my faith rather than what feels good or what is going to be best for my income or even my family. It's a religious test. I think if I ever prepare a witness for testimony or do something like that, I would probably do it a lot differently now than the way I used to do it. Maybe I wouldn't get an adequate award, but that's the way it would have to be done."

Since the start of his suspension on July 3, 1973, petitioner has not engaged in the practice of law and has never held himself out to the public as an attorney. When asked by various attorneys for legal assistance, petitioner on each occasion informed the attorney for whom he performed the work that he was not authorized to practice law. On several occasions, petitioner admitted that he was suspended from the practice of law. In addition, petitioner has never accepted a referral fee from an attorney or any other source for any case since July

1973, but has received non-contingent fees from others for the value of his expertise as a legal scholar.

Petitioner has not been charged or convicted of any other crimes. He has not been involved in any prior disciplinary proceedings.

The Disciplinary Board has found that petitioner possesses the requisite moral qualifications to be reinstated to the practice of law in the Commonwealth of Pennsylvania.

## Competency and Learning in the Law

Since 1973, petitioner has been employed as a professor of law by the University of [    ], specializing in constitutional law, civil rights, administrative law, and federal procedures. He also has taught at [    ] Law School, [    ] University School of Law, and [    ] University in [    ]. Because of his expertise as a professor of law, petitioner has been employed by various attorneys and organizations as a legal advisor or consultant. In addition, petitioner has written approximately 18 or 19 law review articles, reads a substantial number of current cases, including Pennsylvania Supreme Court cases, and teaches continuing legal education courses in the Commonwealth of [    ]. Petitioner also maintains an extensive private library of law-related books and periodicals. He maintains a subscription to all the Federal reports, U.S. Law Week, and Harvard Law Review.

Petitioner has successfully completed the Pennsylvania Basic Practice Course in [    ] in December 1988. However, petitioner has testified that if reinstated, he does not have any plans to actively practice law in the state of Pennsylvania. Petitioner stated:

"I do not intend to leave [    ]. I intend to stay at [    ] right now until I retire of old age which will be

in about 10 years now. What will happen after that, I don't know . . . I might come back to [   ]. I don't have any plans to practice law full-time for money. Certainly I would be glad to have a public interest case, pro bono work, in Pennsylvania as in other states."

In light of these facts, petitioner has proven, by clear and convincing evidence, that he has the competency and learning in the law required for reinstatement to practice law in this commonwealth.

## Resumption of the Practice of Law

Petitioner has been greatly affected by his suspension from the practice of law. He has suffered and learned from his past transgressions. As petitioner stated in his own words:

"What I think about almost every day is that I am certified as not worthy to practice law and that has affected my self-esteem and my competence and deprived me of something essential to my person."

Petitioner also testified that he had been seeing a psychiatrist up until 1972 to help him cope with the aftermath of leaving the law and the pressure it had put on his family. Petitioner stated that these problems have been resolved. Petitioner does not have any problem in regard to substance abuse or alcohol abuse. He has never been treated for such problems nor for any related medical problem.

Petitioner is now motivated and dedicated to a reformed life. When asked by the chairperson at the reinstatement hearing whether petitioner would see the same pressures that led to the stress which caused him to withdraw from the practice of law, petitioner made the following reply:

"Those pressures would not return. You see the stress . . . was the stress of a guilty conscience. It

wasn't the stress of trial work or the work load. I enjoyed that . . . There won't be [that] type of stress. There will be great pride and a return of my self-respect rather than stress."

In addition, three associates of petitioner prepared affidavits testifying to the truthfulness of petitioner's testimony and to the fact that it would not be detrimental to the integrity and standing of the bar if petitioner were reinstated to practice law. Affidavits were prepared and signed by [I], Dean of the University of [ ] School of Law, [J], Esq., and [E], Esq.

## CONCLUSIONS OF LAW

For the foregoing reasons the Disciplinary Board unanimously finds and concludes as follows:

(1) Petitioner has the moral qualifications for readmission to the practice of law in the Commonwealth of Pennsylvania.

(2) Petitioner has the competency and learning in the law required for readmission to the practice of law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law in the Commonwealth of Pennsylvania will not be detrimental to the integrity and standing of the bar or the administration of justice, nor will it be subversive of the public interest.

(4) Petitioner should be reinstated to the practice of law in the Commonwealth of Pennsylvania and should be admitted to the bar of the Supreme Court of Pennsylvania.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to the Supreme Court of Pennsylvania that the instant petition for reinstatement of [petitioner] to the practice

18

of law in the Commonwealth of Pennsylvania be granted by your honorable court.

The board further recommends that, pursuant to rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Mr. Stoelker and Ms. Heh did not participate in the adjudication.

### ORDER

And now, March 15, 1990, upon consideration of the report and recommendations of the Disciplinary Board dated January 30, 1990, the petition for reinstatement is granted.

Pursuant to rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.